UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

JOSE LUIS BUENROSTRO,

        Defendant.

NO. CIV. S-95-0504 WBS PAN

ORDER RE: MOTION TO DISMISS

----oo0oo----

Defendant Jose Luis Buenrostro, a prisoner in the custody of the Federal Bureau of Prisons, filed a motion pursuant to Federal Rule of Civil Procedure 60(b) for relief from judgment stemming from a prior 28 U.S.C. § 2255 habeas proceeding. Plaintiff United States of America ("United States") now moves to dismiss defendant's motion for lack of jurisdiction.

I.   Factual and Procedural Background

On November 9, 1995, defendant was charged with conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1).  (Def.'s Mem. in Supp. of Mot. for

1

1  Relief from J. 7:9-11.)  The United States extended a plea
2  bargain to defendant on January 11, 2006, offering a
3  non-cooperation disposition with an agreed sentence of fourteen
4  years.  (Id. at 10:2-6.)  After the plea offer expired, the
5  United States filed two informations on May 16, 1996 and June 6,
6  1996, respectively, each charging a separate prior felony
7  conviction against defendant involving the sale of cocaine.  (Id.
8  at 14:17-21.)  As a result of these prior convictions, defendant
9  faced potential enhancement to a mandatory life term.  (Id. at
10 14:27-15:2.); see 21 U.S.C. § 841(b)(1)(A)(viii) ("If any person
11 commits a violation . . . after two or more prior convictions for
12 a felony drug offense have become final, such person shall be
13 sentenced to a mandatory term of life imprisonment without
14 release . . . .").
15        After a five-day jury trial, defendant was convicted of
16 the aforementioned conspiracy charge on June 26, 1996.  (Docket
17 No. 130; Pl.'s Mem. in Supp. of Mot. to Dismiss 3:13-15.)  On
18 January 8, 1997, this court sentenced defendant to a mandatory
19 life term.  (Docket No. 191; Pl.'s Mem. in Supp. of Mot. to
20 Dismiss 3:15-16.)  On that same day, defendant terminated his
21 trial counsel.  (Docket Heading, Case No. 95-0504 (noting
22 defendant's trial counsel's date of termination).)  On March 5,
23 1999, the Ninth Circuit affirmed defendant's conviction and
24 sentence (Docket. No. 218), and defendant subsequently filed a
25 motion under 28 U.S.C. § 2255 on September 13, 1999 claiming
26 ineffective assistance on the part of defendant's trial counsel.
27 (Docket No. 219.)  On October 6, 2003, this court denied
28 defendant's § 2255 motion (see Docket No. 306 (Oct. 6, 2003

2

Order)), and the Ninth Circuit subsequently affirmed.[1] <u>United States v. Buenrostro</u>, 163 Fed. Appx. 524 (9th Cir. 2006). The United States Supreme Court denied certiorari on November 27, 2006. <u>Buenrostro v. United States</u>, 127 S. Ct. 659 (2006).

Defendant now alleges that, on or about December 18, 2006, he was informed for the first time about the United States' original plea offer.[2] (Def.'s Mem. in Supp. of Mot. for Relief from J. 7:9-11, 9:5-8.) After making two informal attempts to access the United States' case files in February and March of 2007, defendant submitted a request via the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to obtain his case file in order to review the nearly decade-old correspondence between

---

[1] Defendant's § 2255 motion argued that his trial counsel was ineffective in failing to preserve an objection to a ruling admitting defendant's felony convictions under Federal Rule of Evidence 609, for not calling defendant as a witness, and for incorrectly advising defendant about the consequences of not testifying. (<u>See</u> Docket No. 303 (Magistrate Judge Nowinski's Findings and Recommendations 2:13-18).) Magistrate Judge Nowinski subsequently found--in his findings and recommendations later adopted by this court--that, while defendant's trial counsel indeed performed deficiently, defendant nonetheless could not demonstrate the requisite prejudice. (<u>Id.</u> at 12:11); <u>see</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686-90 (1984) (finding that a defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's performance was unreasonably deficient, and (2) that defendant was prejudiced by reason of counsel's actions or omissions).

[2] Defendant states that he was unaware of the plea offer until a man named "Rudy"--purportedly the former employer of a co-defendant in the conspiracy case--approached defendant's brother in December 2006 and asked why defendant did not accept the United States' plea offer. (Buenrostro Decl. ¶ 9.) Defendant's trial counsel has stated in his declaration that, while "I did not initially discuss the [United States] plea offer with [defendant,] . . . [i]t is my general policy to discuss plea offers with my clients." (Alcala Decl. ¶ 4.) Defendant's trial counsel further declares that he cannot remember whether or not he followed his "general policy" by eventually mentioning the plea offer to defendant. (<u>Id.</u>)

3

the United States Attorney and defendant's trial counsel on May 1, 2007. (Def.'s Mot. for Relief from J. Ex. 6.) The file was promptly turned over, and it indeed included several copies of written correspondence and supplemental documents detailing the plea offer that the United States had sent to defendant through his trial counsel back in 1995 and 1996. (Pl.'s Mem. in Supp. of Mot. to Dismiss 4:11-15.)

On December 12, 2007, defendant filed this motion for relief from his § 2255 judgment pursuant to Federal Rule of Civil Procedure 60(b). In his motion, defendant presents a new claim of ineffective assistance of counsel based on his trial counsel's failure to communicate the plea offer to him. (Def.'s Mem. in Supp. of Mot. for Relief from J. 22:18-26.) Defendant further contends that his trial counsel was unreasonably ignorant of defendant's exposure to his eventual mandatory life sentence, and thus his failure to notify defendant of the plea offer is compounded by his refusal to accept or even consider the proposed fourteen-year sentence. (Id.) The United States moves to dismiss the Rule 60(b) motion on the jurisdictional grounds[3] that it is in fact a successive § 2255 motion inappropriately made without obtaining leave from the Ninth Circuit.

---

[3] When considering a motion to dismiss for lack of jurisdiction, the district court "may properly weigh the evidence to determine whether it has jurisdiction." Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005); see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . . the court may inquire, by affidavits or otherwise, into the facts as they exist."); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside of the pleadings does not convert a motion to dismiss into a motion for summary judgment).

4

II. <u>Discussion</u>

Under Rule 60(b), a party may seek relief from judgment and re-open his or her case in limited circumstances, "including fraud, mistake, and newly discovered evidence." <u>Gonzalez v. Crosby</u>, 545 U.S. 524, 528 (2005); Fed. R. Civ. P. 60(b).  In the context of habeas proceedings, however, the Rules of Civil Procedure may be used only to the extent that they are not inconsistent with the statutory provisions and rules that apply in those proceedings.  Fed. R. Civ. P. 81(a)(2).

In <u>Gonzalez</u>, the United States Supreme Court discussed in detail the distinction between a Rule 60(b) motion and a successive habeas petition, noting that the title appended to the motion is not determinative.  545 U.S. at 530-31.  The Court found that a motion, even though designated as one under Rule 60(b), will be treated as a second or successive habeas petition--and thus subject to the rules affecting successive petitions--if it raises a "claim" as that term is defined in 28 U.S.C. § 2244(b).  <u>Id.</u> at 531.  "[A] 'claim' as used in § 2244(b) is an asserted federal basis for relief from a state court's judgment of conviction," <u>id.</u> at 530,[4] and "[a] habeas petitioner's filing that seeks vindication of such a claim is, if not in substance a 'habeas corpus application,' at least similar

---

[4] Although <u>Gonzalez</u> was decided in the context of a federal challenge to a state conviction arising under 28 U.S.C. § 2254, circuit and district courts have applied the principle to federal habeas petitions under § 2255 as well.  <u>See</u> <u>United States v. Scott</u>, 414 F.3d 815 (7th Cir. 2005); <u>United States v. Bell</u>, 159 Fed. Appx. 48 (10th Cir. 2005); <u>United States v. Battles</u>, No. 99-2055, 2008 WL 436962, at *2 (E.D. Cal. Feb. 14, 2008); <u>United States v. Cortez</u>, No. 98-2427, WL 1322349, at *1 (E.D. Cal. May 4, 2007); <u>United States v. Wynne</u>, No. 95-0700, 2006 WL 3348505, at *1-2 (E.D. Cal. Nov. 16, 2006).

enough that failing to subject it to the same requirements would be 'inconsistent with' the statute." Id.  Therefore, in cases where "the motion attacks the validity of the criminal conviction or sentence, it is a collateral attack under § 2255, no matter what its label." United States v. Cortez, No. 98-2427, WL 1322349, at *1 (E.D. Cal. May 4, 2007); see also United States v. Carraway, 478 F.3d 845, 848 (7th Cir. 2005) ("[A]ny post-judgment motion in a criminal proceeding that fits the description of a motion to vacate, set aside, or correct a sentence set forth in the first paragraph of section 2255 should be treated as a section 2255 motion.").

When a Rule 60(b) motion qualifies as a second or successive habeas petition, it must comply with the habeas requirements delineated in the Antiterrorism and Effective Death Penalty Act of 1996.  28 U.S.C. § 2244.  Notably, before a district court can accept a successive habeas petition, "the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions." Gonzalez, 545 U.S. at 530; see also 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.").  The Gonzalez Court reserved a narrow exception to this procedural maxim that would be implicated only when a Rule 60(b) motion does not qualify as a successive habeas petition because it "attacks, not the substance of the federal court's resolution of a claim on the merits, but

6

some defect in the integrity of the federal habeas proceedings." 545 U.S. at 532; see, e.g., id. at 533 (allowing a Rule 60(b) motion contending that the district court misapplied the federal statute of limitations to proceed as denominated because it "creates no inconsistency with the habeas statute").

Here, it is undisputed that defendant did not seek an order from the Ninth Circuit authorizing this court to consider his current motion. Nor does defendant suggest that his newfound "ineffective assistance of counsel" claim is aimed at any end other than to revisit this court's previous unfavorable ruling on the merits. See id. at 534 ("[A] Rule 60(b) motion that seeks to revisit the federal court's denial on the merits of a claim for relief should be treated as a successive habeas petition.").

Rather, defendant contends that his Rule 60(b) motion should not be branded a successive habeas petition because it also "attacks the integrity of the court," thus falling within the ambit of the narrow exception referenced in Gonzalez. Specifically, defendant asserts that, during his § 2255 proceedings, the United States was aware of, and illegally withheld in its files per Brady v. Maryland, 373 U.S. 83 (1963) (detailing government's obligation to turn over evidence of an exculpatory nature), evidence unavailable to defendant's habeas counsel that proved defendant was denied effective assistance of counsel--i.e., the 1995 and 1996 written correspondence between defendant's trial counsel and the United States that purportedly demonstrate that defendant's trial counsel was deficient in his

7

knowledge of defendant's sentencing exposure.[5]

Defendant's argument that the United States failed to fulfill its obligation under Brady, therein materially contributing to a "defect in the integrity of the court," is unconvincing.  The United States readily sent defendant's trial counsel copies of the plea bargain, informations, and related correspondence throughout 1995 and 1996.  During the subsequent § 2255 proceedings, the United States appropriately assumed that defendant's current habeas counsel, who has been involved in this case since March 2, 2000 at the latest, had obtained her predecessor's files and thus had access to the same documents the United States had sent to defendant through previous counsel. See Iturribarria v. I.N.S., 321 F.3d 889, 899 (9th Cir. 2003) (stating that upon retention of new counsel, party should make prompt effort to obtain original file); Buffalo Carpenters Pension Fund v. CKG Ceiling & Partition Co., 192 F.R.D. 95, 99 (W.D.N.Y. 2000) (noting that successive attorneys should understandably focus their efforts first on securing the relevant files from defendant's former counsel and then on searching for missing boxes of documents); In re Coleman, 278 Ga. 864, 865 (2005) ("[N]ew counsel repeatedly demanded that [prior counsel]

---

[5] In his opposition to the instant motion, defendant also asserts that the United States knew at the time of his § 2255 proceedings that his trial counsel failed to communicate the plea offer to defendant. (Def.'s Opp'n to Pl.'s Mot. to Dismiss 2:22.)  Defendant has not alleged any facts supporting this conclusory assertion, and thus the court is not obligated to entertain its viability.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

8

provide the client with additional documents that the client believed were missing from the file and after she failed to provide the documents."); Wamser v. State, 652 P.2d 98, 99 (Alaska 1982) (noting that defendant "retained new counsel" who appropriately "reviewed the original file in the case").

It was not until February 2007 that defendant's habeas counsel finally asked the United States for a copy of the case file because, as she recently explained, "[trial counsel] never gave me his file back when I investigated the § 2255 claims I was raising on [defendant's] behalf, and advised me that he believed it had been destroyed in a flood of the office storage where it had been kept." (Def.'s Mot. for Relief from J. Ex. 5.) Given defendant's habeas counsel's implicit admission that she never obtained the case file and, more importantly, failed to notify either the United States or the court of this purported predicament during or soon after defendant's § 2255 proceeding, defendant cannot reasonably expect to maintain a Brady claim against the United States on account of not turning over already-provided materials that it had no reason to believe had become unavailable in the interim.

The United States was under no requirement to send, sua sponte, this type of information twice. "[A] defendant has no Brady claim when allegedly suppressed information was fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the court was his lack of reasonable diligence." Gonzales v. Terhune, No. 03-15652006, 2006 WL 83054, at *19 (N.D. Cal. Jan. 12, 2006) (internal citation and quotations omitted); see also Cooper v.

Brown, 510 F.3d 870, 989 (9th Cir. 2007) (denying Brady claim on grounds that "[w]ith due diligence, the [evidence] could have been located well before then, and the instant claim could have been presented in Petitioner's first federal habeas petition"); Baumann v. United States, 692 F.2d 565, 580 (9th Cir. 1982) ("[B]ecause all of the underlying facts relevant to his present allegations of newly discovered evidence . . . could have been substantiated with the exercise of reasonable diligence, the evidence is not newly discovered.").

Despite knowing that defendant's trial counsel's case file was apparently destroyed at the time she initially investigated defendant's "ineffective assistance of counsel" claims in or about the year 2000, habeas counsel made no attempt to assiduously obtain a copy of the materials <u>until nearly four years after</u> defendant's § 2255 proceeding concluded.[6]  There is no reason to believe that habeas counsel, on behalf of defendant, could not have requested a copy of the case file any time from the United States during the period of 2000 to 2003 or, in the alternative, sought a contemporaneous court order requiring production of the file.  See Albillo-De Leon v. Gonzales, 410 F.3d 1090, 1094 (9th Cir. 2005) (petitioner demonstrated due diligence by filing a FOIA request for his case file immediately after becoming concerned about his counsel's performance); Atkins v. Fischer, 232 F.R.D. 116, 199 (D.D.C. 2005) (requiring

---

[6] The court finds it rather incredible that a habeas counsel would proceed to litigate a § 2255 "ineffective assistance of counsel" motion without exhausting every attempt to promptly obtain case files that likely include correspondence, procedural records, and other vital indicia of conduct regarding the very attorney that his or her client's motion is targeting.

10

1  plaintiff's counsel to provide defendants' new counsel with
2  missing documents from file after new counsel had "determined
3  that a substantial amount of discovery related materials were
4  missing from the files handed over to them by Defendants'
5  previous attorneys").  Had habeas counsel undertaken a diligent
6  investigation and/or made an appropriate request, in all
7  probability she would have discovered the materials she now
8  erroneously blames the United States for failing to turn over.
9          Consequently, there is no legal support for the
10 defendant's claim that his habeas counsel's seven-year-long
11 failure to read the case file is somehow the product of a
12 government-induced "defect in the integrity of the federal habeas
13 proceeding."  Gonzalez v. Crosby, 545 U.S. 524, 532 (2005).
14 Indeed, "an attack based on the movant's own conduct, or his
15 habeas counsel's omissions . . . ordinarily does not go to the
16 integrity of the proceedings, but in effect asks for a second
17 chance to have the merits determined favorably."  Id. at 532 n.5.
18         Because defendant's Rule 60(b) motion seeks to add new
19 "ineffective assistance of counsel" allegations that attack the
20 substance of the court's prior resolution of a claim on the
21 merits as opposed to a defect in the integrity of the federal
22 habeas proceedings, the court finds that defendant's motion is,
23 in substance, a successive § 2255 motion "wrapped in a [Rule]
24 60(b) rubric."  United States v. Montalvo, No. 89-0062, 2007 WL
25 915187, at *3 (E.D. Cal. Mar. 23, 2007).  As such, pre-filing
26 authorization is required from the Ninth Circuit before this
27 court may commence litigation on the merits of defendant's
28 motion.

11

       IT IS THEREFORE ORDERED that the United States' motion to dismiss defendant's Rule 60(b) motion be, and the same hereby is, GRANTED.

DATED:  April 29, 2008

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE